[Opinion delivered June 12, 1880.]

---

J. W. H. CLIETT ET ALS. v. E. H. CLIETT ET ALS.

(Case No. 3435.)

1. WILL — DEVISE OF LAND — CONDITION PRECEDENT.— A will devising land to such of the testator's children "as shall move on it before the 1st day of January, 1870, or before my decease," is not contrary to public policy and good morals; the condition requiring

them to move on the land within a specified time was a condition precedent, and devisees failing to comply were not entitled to claim under the will. 2 Redf. on Wills, 283; 1 V. & B., 248.

2. CODICIL — WILL.— The effect of a codicil ratifying, confirming and republishing a will is to give the same force to the will as if it had been written, executed and published at the date of the codicil, and all the provisions of the will not inconsistent with the codicil will stand.

APPEAL from Caldwell. Tried below before the Hon. L. W. Moore.

This suit was instituted on the 7th day of August, 1875, in the district court of Caldwell county, by John W. H. Cliett, Betsy E. Harralson, joined by her husband, Eliza M. Mosely, joined by her husband, and Thomas A. J. Cliett, all of whom were alleged to reside in the state of Alabama, except Thomas A. J. Cliett, who was alleged to reside in the state of Mississippi, against Edilda H. Cliett, since deceased, but represented in this suit by Aaron Compton, administrator of her estate, and who was the widow of Thomas H. Cliett, deceased, the testator under whose will the plaintiffs claim; also against Nathan M. Cliett, John G. Blanks, Z. J. Williams, Moses Gray, Griffith Rogan, Nathan M. Cliett and B. J. Collins, and also, by amended petition, against Emeline Davis and her husband, Stephen Davis.

The petition alleged that the plaintiffs, John W., Betsy E., Eliza M. and Thomas A. J. Cliett, were children by his first wife, Jane Cliett, and heirs at law of Thomas H. Cliett, deceased, late of Caldwell county, state of Texas. That said Thomas H. Cliett died on the 27th day of May, 1868, leaving a will, which was set out in full in the petition. It gave to his wife, Edilda H. Cliett (his second wife, and who survived him), for life, with remainder to her children, naming them, the homestead place, known as the "Steen place," with the crops standing or gathered, with all the rents or issues pertaining to said premises, at the time of his death, after paying all his debts; also his stock of hogs.

The will then proceeds thus, viz.:

"The place known as the Procter place, adjoining on the southeast by the Steen place, on the northwest by the

Walker place, and on the west by the San Marcos river, containing about five hundred acres, more or less, and being part of the Morrison league, for the great love and regard I have for my children had by my first wife, named Jane Cliett, now deceased, if they shall move to it by the 1st day of January, 1870, or before my decease, I give and bequeath as follows, for their own use and benefit, viz.: At a line to start on the original north line, so as to cross at the lower ford of the Morrison creek, in the field, to intersect the original south line joining the Steen land, then running on the original line so as to include one hundred acres, containing the Procter houses, which I will and bequeath to Nathan M. Cliett. The residue of the tract I will and bequeath to the children that may be here, as aforesaid,— that is to say, Eliza M. Mosely, Betsy E. Haralson, John W. H. Cliett, Thomas A. J. Cliett, and Wilson L. Cliett, to be equitably divided; Wilson's to include his improvements. And I hereby appoint Nathan M. Cliett to receive and collect all rents and issues that may be due or is gathered, pertaining to the Procter place, and to pay all debts that may be due by it, and, after paying himself for his trouble, to divide the surplus, if any, among his own brothers and sisters that may be here, as aforesaid."

The will contained provision for the sale of "loose" property, under certain qualifications and directions given, and that the proceeds, after paying all expenses, to be divided among his children. The testator appointed Edilda H. Cliett, N. H. Cliett, Edward Heppenstall, Elder T. P. Greenwood and G. Rogan executors, and the will provided that if either of said executors refuse or fail to act, then a majority of the remaining executors shall appoint some fit and competent person to act in their place, and that a majority of the above named executors may transact any business pertaining to the intention of this will; and it also provided that the executors should not be held responsible to make returns to the county court nor any other court whatever, until a final settlement for a discharge was had.

The will was dated 3d day of June, 1867.

On the 20th day of January, 1868, the testator made the following codicil to said will, viz.:

"On this, the 20th day of January, 1868, while still of sound mind and disposing memory, I, Thos. H. Cliett, further add to my within and foregoing will, dated June 3, 1867, as follows: Of the ninth line from top of page three these words are stricken out, viz., the judge of the county court; and interlined with, a majority of the remaining executors. I further add that my executors shall divide the land between the within named heirs in a just and equitable manner, and that their division shall be final, except, where improvements have been made by the heirs, such improvements shall be included in their portion making them, without reference to their value, and that the improvements made by said heirs shall be included in the share of the one making them, and also N. M. Cliett's share, which is stated in the foregoing will; and, further, any moneys or cash assets that may be on hand at my death, my wife, E. H. Cliett, shall take into possession and use so much thereof as she may need for her own personal benefit, keeping a strict account of all such outlays, and at her death, the remainder, if any, shall be equally divided between all my living children. I further add, should either of the executors named fail to act, that I nominate William K. Posey to fill vacancy."

The petition alleged that the will was probated in the year 1868, and that Edilda H. Cliett, N. M. Cliett and G. Rogan qualified as executors of the will, June 29, 1868, and entered upon their duties as such; and that none of the other executors nominated in the will have ever qualified, nor have the vacancies caused by their failure to qualify ever been filled. That Thos. H. Cliett at the time of his death was possessed of $1,334.55 cash — notes and accounts amounting to $681.18, and personal property, including horses, cattle, household and kitchen furniture, farming implements, etc., of the value of $2,000. That, in violation of the provisions of the will and in fraud of the rights of petitioners, the executors took said property into their possession

and proceeded to appropriate the same to their own use, to their damage $10,000.

The plaintiffs allege that it was the intention of said will that they should have and take four undivided sixths interest in the Procter tract of land, which the petition sets forth by metes and bounds, released and discharged from all conditions, and four undivided elevenths interest in the rents and issues of said lands and the personal property of which said testator died possessed, which petitioners say were reasonably worth $5,500, and that the profits of said land since the testator's death are reasonably worth the sum of $2,500 per annum; that if any conditions were imposed upon them by said will, that they were contrary to public policy and good morals; and that petitioners, being heirs, were entitled to notice of the same before they could be affected thereby, and that they had no notice of any such conditions prior to the death of said Thos. H. Cliett on or before the 1st day of January, 1870. Wherefore they are entitled to four-sixths interest in the land, with rents and profits of the same, and four-elevenths of the personal property of said testator, and they allege that their title thereto vested immediately upon the death of said testator. Petition alleges that said Edilda, Nathan M. and Wilson L. Cliett colluded and conspired together to defraud petitioners out of their share of the estate of their said father, and purposely and fraudulently concealed from petitioners the fact of the existence of said will, as well as the conditions and limitations therein expressed; and that on the 15th day of September, 1868, the said Griffith, Rogan and Edilda M. Cliett executed a deed of conveyance to Nathan M. Cliett of one hundred acres of said land; and that in January, 1870, they executed to said Nathan M. Cliett a deed to certain tracts of said land; and on the 12th day of January, 1870, they, being joined by N. M. Cliett, executed a certain other writing purporting to convey to Wilson L. Cliett certain other tracts of said land, which said deeds embraced the whole of said tract known as the Procter place. Petitioners allege that said pretended conveyances were made

without authority from the probate court, and in violation
of the trust created and the power conferred by said will,
and in fraud of the rights of petitioners, and as to them
are void and of no effect. Plaintiffs allege that, after said
conveyances were made, defendants Gray, Collins, Blanks
and Williams entered upon said lands, and have taken pos-
session thereof under deeds of conveyance from said Nathan
M. and Wilson L. Cliett, with full knowledge of the title of
petitioners, to four-sixths of the same, and of the fraudulent
acts of said executors. Plaintiffs allege the receipt of rents
and profits by said vendees, Gray and others, and pray for
damages.

The petition concludes with a prayer that the defendants
appear and answer, and for an order of survey to ascertain
the relative amounts of said land held and claimed by each
of said defendants Gray, Collins, Blanks and Williams; for
an order annulling, setting aside, and declaring of no effect
the three several deeds from said executors, and requiring
them to return into court a full exhibit of the condition of
said estate; for an order confirming petitioners' title to four-
sixths of said land, and for partition of the same between
petitioners and defendants Gray, Collins, Blanks and Will-
iams; and for judgment against said defendants for their
said damages, and for general relief. The amended petition,
filed November 19, 1875, alleges the death of Edilda H.
Cliett since the institution of this suit; prays for process
against her administrator, Aaron Compton; makes said
Davis and wife parties, alleging that they are setting up
title to a portion of said land, and pray judgment against
them as in original petition.

The defendants answered the petition, and filed a general
demurrer to it. The plaintiffs had obtained leave to amend
their petition, but on the hearing of the case withdrew ap-
plication for said leave, and declined to amend their plead-
ings; the cause coming on to be heard, the demurrer was
sustained and the cause was dismissed, the plaintiffs declin-
ing to further amend. Judgment final being rendered in
accordance with this ruling against the plaintiffs for all costs

of suit, they gave notice of appeal to the supreme court, and assign as error that the court erred in sustaining defendants' general demurrer to the plaintiffs' petition and dismissing the same.

*Stringfellow & McNeal*, for appellants.

*Nix & Story*, for appellees.

WALKER, P. J.— The leading question in this case involves the construction of the will, and the codicil.    First as to the provisions of the will itself, viewed distinctly from the codicil, which appears, from its recitals, to have been written upon or else attached to the same paper containing the will. The devise to the plaintiffs of equal shares to the brothers and sisters of the testator's first marriage is framed in careful language which clearly manifests the testator's intentions.    Not only does the first clause in the will, which purports to express his will concerning the disposition of the " Procter " tract of land, explicitly attach a condition to the devise which he makes to the beneficiaries, but, seemingly, with a cautious consideration directed against the possibility of misconstruction, in the subsequent clauses or paragraphs of the will, he continues to qualify each expression with reference to that particular devise, with terms which in effect are repetitions of the condition; that condition is, "if they shall move to it" (the Procter tract of land); the other expressions referred to being such as these, viz.:    "The residue of the tract I will and bequeath to the children *that may be here as aforesaid;*" and again, "after paying himself for the trouble, to divide the surplus, if any, among his own brothers and sisters *that may be here as aforesaid.*"    Negative and auxiliary evidence on the face of the will, in aid of this interpretation, is furnished by the use of terms contained in the will quite dissimilar in their application to all the other bequests and devises to his children; both those which relate to bequests to the children of the second marriage, and those in which the children of both marriages jointly and equally

share. In all such, the language used is direct and plain, descriptive of the classes referred to; and the bequests and devises to them contain no qualifications nor conditions whatever requiring that they or any of them shall remove to the land that is given to them, or that the bequest shall be limited by any act whatever to be done by the legatees.

" Among the forms of expression which imply a condition in a grant, the writers give the following: 'on condition,' 'provided always,' 'if it shall so happen,' 'or so that he the grantee pay, etc., within a specified time,' and grants made upon any of these terms vest a conditional estate in the grantee." 2 Wash. Real Prop., p. 3. The term used in the will, " if they shall move to it," is of import precisely equivalent to the forms expressing condition in the grant above quoted, and is not less unequivocal in its meaning than they are. It is a devise of the land " on condition," or " provided that " the devisees shall move upon the land. To " move " upon land has a well understood signification; it is the act of actual domiciliation upon it; "*move*" — "to change residence; to remove, as from one house, town or state to another." Worcester's Dic. " Words, moreover, often create a condition in a will which would not if made in a deed, as where in a will an intention is expressed in devising the land, that the devisee should or should not do certain things in respect to it, it may be construed as creating a conditional estate in him." 2 Wash. Real Prop., p. 3. But here, the expressions used are not simply such as indicate a mere intention by the devisor that the devisees should move upon the land, which of itself might allow the devise to be construed as creating a conditional estate in it, but they are clear and emphatic terms, which of their own force constitute the devise a conditional one. The condition appears on its face to be a condition precedent; it fixes the limit or period within which the devisees are required to perform the act which shall entitle them to the land devised, viz.: " If they shall move to it by the 1st of January, 1870, or before my death." If they never should move to the land the devise would never take effect; it is not a devise of the land with conditions

attached of acts to be done, which may accompany or follow the vesting of the estate, or which may as well be done after as before the vesting of the estate, but the estate is made to vest if the act of moving to the land shall be performed within the limits of designated periods. See 2 Wash. Real Prop., p. 5, sec. 4. "It seems to be agreed that in regard to all conditions, whether in a deed or will, or in simple contracts, where the condition is in the nature of a consideration for the concession, its performance will be regarded as intended to precede the vesting of any right, and so a condition precedent." 2 Redf. on Wills, p. 283. In this case it may be supposed that the testator was influenced by a desire to gather his children from abroad near and around him previous to his death, and that the concession was influenced by it, and perhaps by a further desire that his children after his death should live near each other on the same tract of land, or else that he was unwilling that any part of the land should be occupied by others than his children, or such of them as would be willing to occupy it as a home, which design would be frustated, probably, by making an unconditional devise to them all jointly, unless the motive for retaining the property entire was encouraged by requiring its owners to actually domiciliate themselves upon it. Whatever may have been the inducements to the conclusion of the testator, the terms which he imposed seemed to have been, at all events, "in the nature of a consideration for the concession."

The general intent of the will controls the mere form of conditions, and it is well settled that "where the words are in the form of a condition precedent, but the intentions of a testator, as collected from every part of the will, clearly indicated a different purpose, the latter will prevail." 2 Redf., p. 299, sec. 36. In this case the form of the condition expressed in the will, and the general purpose and intent of the whole, will harmonize in illustrating the same intentions on the part of the testator, and to characterize the devise to the plaintiffs as an estate upon condition precedent. The conditions contained in the will are not, as alleged in the

petition, contrary to public policy and good morals. It is urged by appellants, in argument, that the conditions were captious, and void as to Mrs. Mosely and Mrs. Haralson, because, being married women, they were incapable of assenting to them, in the matter of selecting their domicile. "The testator, if he does not infringe the rules of law, has a right to say with Staberius, when he imposed an unpalatable condition in his will, *sine ego prave, seu recte, hoc volui.*" 4 Kent, note (a), 535. It is no objection to carrying out the obvious intention of the testator, if it be not illegal, or against good morals, that it is strange, or unnatural, or absurd. 1 Redf. on Wills, 434, 435. And, besides, "conditions requiring an illegal act, as in restraint of marriage, are void; but if they are conditions precedent, the estate will not vest, it being of the essence of the bequest that it shall not become operative until or unless the condition is performed or takes effect. And the same rule applies as to the vesting of an estate, made dependent upon the performance of a condition precedent, where the condition is or becomes impossible. The estate which depends upon a condition precedent cannot vest where the condition fails for any cause." 2 Redf. on Wills, p. 284, sec. 8. "A condition is not regarded as impossible because it is beyond the power of the devisee to perform it. It is so, only when it becomes physically impossible of performance." 2 Story, Eq. Jur., sec. 1305. "A legacy on condition of being claimed by the legatee in a certain time and manner is forfeited if the legatee die without performing the condition." 2 Redf., 285 (note 14), citing Tulk v. Honedetch, 1 V. & B., 248.

The appellants allege the want of notice to them of the provisions of the will until after the period of time, viz., 1st of January, 1870, and a fraudulent combination to deprive them of such information. If these facts entitle them to exemption from the stringency of the conditions, they nevertheless leave standing in continued force the condition upon which the estate, at last, must vest, if at all, viz., that they shall move to the land. They do not deny their knowledge of the contents of the will after the month of

January, 1870; it will be taken, therefore, on the demurrer that they did so know, and yet with such knowledge they do not allege any attempt to move to the land, nor to remove to the state, nor that they took any action in the premises during the period which intervened up to the institution of this suit on the 7th day of August, 1875, about five years and six months thereafter; nor does the petition allege an offer to move at the time of bringing suit, nor at any time since, nor does it intimate any wish, intent or desire to comply with the said condition.   The petition admits that the will was duly probated in the proper county shortly after the testator's death in 1868; such an admission neutralizes the allegation of combination and fraud.   A recorded will gives full notice to the world of its contents; there could be no fraudulent concealment, at least as to what the will contained, after it was recorded.   Whether the devisees, however, had notice or not is an immaterial fact, unless they comply with the condition of the devise to them, and if, after a period of more than seven years from the date of the testator's death, they do not move nor offer to move upon the land, nor allege a willingness to do so, they certainly show no cause of action whereby to recover the land under the provisions of the will.

It remains to be considered how far the will is affected by the codicil.   "It is a clear principle of English and American law, that all codicils, however numerous, are to be regarded as parts of the will, and all, together with the will, are to be construed as one instrument."   1 Redf. on Wills, 287.   The codicil should be so construed, if it can be fairly done, as to make it harmonize with the purposes declared in the body of the will.   Proctor v. Duncan, 1 Duvall, 318; Delafield v. Parish, 25 N. Y., 9.   A codicil which clearly recognizes the existence of a former will operates as a republication of it; and the effect of a codicil ratifying, confirming and republishing a will is to give the same force to the will as if it had been written, executed and published at the date of the codicil.   2 Redf. on Wills, 287, 288.   "In interpreting a will and codicil, the general rule is that the

whole will takes effect so far as it is not inconsistent with the codicil. And if a devise in the will is clear, it is incumbent upon the party who claims its revocation by the codicil to show an intention to revoke, equally clear with the original intention to devise." Id., 291, note 22, and authorities there cited.

"The general rule of construction is that already stated, to allow all the provisions of the will to stand which are not inconsistent with those of the codicil, and in determining this, to seek for the intention of the testator as far as practicable." . . . "And it seems clear that general words will not ordinarily be held a revocation of a specific devise or bequest, where it is apparent such could not have been the intent of the testator." 1 Redf. on Wills, pp. 352, 353. . . . "The codicils will be construed as being consistent with the will, where the discrepancy claimed is not obviously intended by the testator." Id., 353, 354.

The application of these rules and maxims of construction to the codicil before us relieves the subject of all doubt whatever, if indeed any serious question could otherwise have existed concerning the testator's intentions in making both the will and the codicil. The codicil seems to have been indorsed upon or attached to the will itself, for the will is expressly recognized and referred to at the beginning of the codicil as "my within and foregoing will, dated June 3, 1867." Construing the will and codicil together as if both had been written at the same time with the codicil, and as one instrument, it is apparent no change was intended to be made by the testator in regard to the devise to the plaintiffs contained in the will; and the provisions made in respect to the subject-matter, which are contained in the codicil, are not merely consistent with the conditional devise in the will, but they are just such as might be expected to be added in order to encourage the acceptance of the devise by the devisees, and to prevent the litigation which might be entailed among them, growing out of questions of partition and improvements made and to be made by those who were then upon the land, as well as by those who might move to

the land before the end of the time limited in the will. The will itself recognized the fact that Wilson L. Cliett had improvements upon the land at the date of the will, and presumably was then living on it, or was expected by the testator so to do; the will attempted to make suitable provision for an equitable division between all of the legatees; for as to N. M. Cliett his part was designated by metes and bounds, and as to Wilson L., the will provided that his improvements should be included in an equitable division to be made between all who would move to the land. The codicil provides that the executors shall divide the land between the within named *heirs* in a just and equitable manner, and that their division shall be final, except that where improvements have been made by the *heirs*, such improvements shall be included in the portions of those respectively who shall have made them, without reference to their value, and that the improvements made by said *heirs* shall be included in the share of the one making them; "and also N. M. Cliett's share, which is stated in the foregoing will." It is evident that the division here referred to has respect to the Procter place. There were but two tracts of land named in the will — the other, the homestead place, was given to his wife for life, and remainder to her children. No division of that tract could have been contemplated during the pendency of the administration of his estate; and the direct reference to the share of N. M. Cliett, which was one hundred acres in the Procter tract, as well as the entire context of the codicil, shows conclusively that the division to be made was of the Procter tract. The additional provisions concerning it, then, were to carry out, without change in the condition of the devise contained in the will, the terms of said devise. It was intended to afford the same guaranties to the other devisees who would move to the land in respect to their improvements in the division which would be made, as the will had given to N. M. Cliett and to Wilson L. Cliett; besides, after giving that assurance, it meant to prevent dissensions and litigation by a final, irrevocable partition to be made by the executors of the will.

The intention of the testator is clear and manifest, and the use in the codicil of the word " heirs," in the place of " children," in describing the devisees, in no wise weakens the force of the construction we have given to these instruments. There is no expression whatever in the entire instrument which implies an intention to change or vary the terms of the devise in the will; so far from it, indeed, that the codicil, viewed as a whole, may be regarded as a painstaking effort to give thorough effect to it, by making further provision for the just and satisfactory operation of the testator's designs in regard to the disposition of the Procter place.

This view of the plaintiffs' case disposes of every branch of the cause of action set forth in the petition except that which alleges the appropriation by the executors of the cash, notes, accounts, etc., and also the appropriation by them of personal property amounting to $2,000. The brief of counsel abandons the count which relates to the cash, and notes and accounts; and as to the remaining portion of the same, based on the alleged appropriation of personal property, the petition, was, we think, insufficient. The allegations amounted to nothing more than a conclusion of law. In view of the provisions of the will concerning the personal property, no facts were alleged by the petition which showed any certain sum remaining in the hands of said executors after they should have made the reservations contemplated by the will for the use of the widow, and should also have paid all the expenses contemplated in the will to be paid by them. The petition contained only a prayer for a return into court of a full exhibit of the condition of the estate, and no fact is alleged which would give the district court jurisdiction of the accounts of the executors, it not appearing that said executors had yet closed the administration. The county court has jurisdiction to require a final account. The petition is, perhaps, objectionable for multifariousness; it seems to unite causes of action of different natures against defendants who have no common interest nor privity with each other in relation to the subject-matter. Frost v. Frost, 45 Tex., 324. It is not clear to us that an

action against the executors for waste and misappropriation of property, ought, in the same suit, to be joined with an action to recover land, which, although in form may be similated to that of a partition suit, yet which shows on its face that it is a suit, in effect, to try title to the land. However that may be, we think that the petition, according to the terms of the bequest and directions given as to the personal property, was insufficient, and did not show a cause of action against the executors for any alleged default or misappropriation of proceeds of personal property of the estate. Chrisman v. Miller, 15 Tex., 160; Jackson v. Hall, 3 Tex., 305.

We are of the opinion that there was no error in the judgment rendered by the district court, and that it ought to be affirmed, and it will be so awarded.

AFFIRMED.