Alexander *vs.* Mercer and others.

No. 90.—CULLIN C. ALEXANDER, adm'r, *de bonis non,* &c. plaintiff in error, *vs.* JOEL E. MERCER, adm'r, &c. WILLIAM PEAK and others, defendants.

[1.] Where an administrator, upon the discharge of his first sureties, gave a new bond, and subsequently becomes insolvent: *Held,* that Equity will entertain jurisdiction of a bill filed against the administrator and both sets of sureties, praying a discovery of the *amount of the devastavit,* and the *time* when it occurred, in order to charge each set of sureties, according to their respective liabilities on their bonds.

[2.] That it is. not necessary, in order to sustain such a bill, to obtain first a judgment against the *principal;* it being competent for a Court of Chancery so to mould its decree, as to mete out ample justice and full protection to all parties, by rendering the assets of the estate first liable, the individual property of the administrator next, and the property of the sureties only *ultimately* liable.

[3.] A bill against the principal and sureties in the first instance, will be more especially sustained, when it is alleged that a portion of the assets of the estate have been delivered up to the second set of securities, to indemnify them from liability, the nature and value of which are unknown to the complainant, who is suing as administrator, *de bonis non,* of the deceased.

In Equity, in Taliaferro Superior Court.   Decision on demurrer, by Judge SAYRE, October, 1849.

Cullin C. Alexander, administrator, *de bonis non,* with the will annexed, of Chivers A. Nelms, deceased, filed his bill in Equity, against Joel E. Mercer, a former administrator with the will annexed, and his sureties, on two several bonds, alleging that, on the appointment of Mercer, he gave bond, with William Peak and others as sureties, and took possession of the estate of Nelms, to a large amount; that Mercer proceeded to sell the property and collect the notes, and appropriated the money to his own use, to an amount unknown to the complainant; that in 1841, upon the complaint of William Peak to the Court of Ordinary, that Mercer was wasting the estate, a new bond was given by Mercer, and Peak was discharged from the old bond ; and that in 1844, on the complaint of the second sureties, the letters of administration to Mercer were revoked.   The bill farther charged, that Mercer received large amounts of money, of which he made no return, and that the complainant had no knowledge, and could procure it

only from the oath of Mercer, of how much of the property was wasted prior to the discharge of Peak, and how much since that time; that Mercer was entirely insolvent, and that after the revocation of his letters of administration, Mercer turned over to some of the sureties on the second bond, money, property and effects of the estate, the amount, species and value of which were unknown to complainant, but known to be the assets of the estate, by the sureties, at the time they were received by them. The bill prayed discovery and relief.

The bill was demurred to by Peak—

1st. For want of equity.

2d. Because complainant had a complete Common Law remedy.

3d. Because the liabilities on the two bonds are separate, and the sureties on both cannot be joined in the same bill.

4th. Because there had been no judgment against the administrator, showing the amount of his liability, and which judgment is a pre-requisite to the liability of the sureties.

The Court sustained the demurrer on the 3d and 4th grounds taken, and dismissed the bill, and these questions are brought up for review in this Court.

A. J. MILLER, for plaintiff in error, cited—

1 *Lomax on Ex'rs*, 180.   4 *Munf.* 289.   1 *Monroe*, 206.   3 *Ib.* 354.   2 *J. J. Marshall*, 198.   9 *Porter*, 697.   5 *Paige*, 95.

A. H. STEPHENS and TOOMBS, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Chivers A. Nelms, of Taliaferro County, departed this life, testate, in 1837, leaving Swepson Jeffries his executor, who qualified, and died shortly thereafter. Joel E. Mercer, in January, 1838, was appointed administrator, *de bonis non cum testamento annexo*, upon the estate of Nelms, and executed the usual bond for the faithful performance of his duty, with William Peak and others as his securities. In May, 1841, upon the complaint of Peak to the Court of Ordinary, Peak was discharged, and Mercer gave a new bond—several others joining him. After this, in

1844, Mercer was removed from the administration for alleged mismanagement; and in 1848, letters were granted to Cullen C. Alexander, the complainant, who intermarried with one of the heirs of Nelms, who filed his bill against Mercer and both sets of securities, to discover the amount of the estate which went into Mercer's hands, and which the complainant charges was wasted by him, or converted to his own use, and to account for the same. He predicates his claim to the interposition of Chancery, upon the ground that, as co-obligors, all of the defendants are interested in the suit ; that he is unable to discover when the devastavit was committed—whether during the liability of Peak or since his discharge ; that he has no way of ascertaining or establishing the amount of assets, or the time when the waste occurred, except by appeal to the conscience of Mercer; that Mercer, the principal, turned over a large quantity of assets belonging to the estate, to some one or more of the second set of securities, of the nature and value of which he is entirely ignorant, and to which he, as the successor of the said Mercer, is entitled ; and, finally, that Mercer himself is entirely insolvent.

Peak demurred to the bill, and insisted that the securities could not be sued, in connexion with the principal, in a Court of Equity, nor in any other Court, until a breach of the bond was first established, by a judgment of some Court of competent jurisdiction, fixing the amount of the defalcation by Mercer. The demurrer was sustained, upon the authority of an intimation by this Court, in *Ray and others vs. The Justices of the Inferior Court of Macon County,* 6 *Ga. Reps.* 303.

[1.] In writing out the opinion of this Court in that case, I did distinctly state, " that if necessary, I should be prepared to maintain that, *ordinarily* at least, suit cannot be brought upon an executor's, administrator's or guardian's bond, against the sureties, until the principal has been first called to account, either before the Court of Ordinary, or some other tribunal of competent jurisdiction ;" and I entered briefly into some of the reasons for this suggestion. In the case of *The Inferior Court of Irwin County vs. Sloan and others,* (7 *Ga. Rep.* 31,) the intimation before thrown out was fully adopted, and we there held, that sureties to executors', administrators' and guardians' bonds, are not liable to suit thereon, *at Law,* under the Act of 13th December, 1820, until the plaintiff has first established his demand against

the principal in his representative character, by suit and judgment, or decree of a Court of competent authority. But in pronouncing this judgment, we were careful, as it will be seen, to limit it to suits *at Law;* and to prevent misconstruction, it is expressly declared, that there are cases where Equity would grant relief against sureties, without the preliminary judgment against the trustee. We were sitting as a *Court of Law,* deciding a *legal question* on the case as *then presented,* and had nothing to do with what a Court of Equity might do in a case rendered different in its circumstances by the forms peculiar to such a Court. So that, independent of the express reservation which this Court was cautious enough to make, these opinions would not, upon general principles, warrant the interpretation which is sought to be put upon them.

The question then recurs, and, as we conceive, wholly untrammeled by any previous adjudication made by this Court, under what circumstances a suit in Equity may be brought against the securities of an executor, administrator or guardian, without any previous judgment or decree against their principal?

By the Act of 1820, (*Prince,* 445,) it is evident that a bill would lie against the securities in the first instance, provided the principal resided without the State; and it is conceded in the argument, and supported by authority, that where the trustee dies insolvent and without any personal representative, a Court of Equity, without any previous suit having been brought against the principal, to convict him of a devastavit, would convene the securities and make them directly liable for any misapplication or waste of the assets which shall be established in the progress of the suit. *Carroll vs. Connet,* 2 *J. J. Marsh. Rep.* 198. And the reason for allowing such a proceeding, where the principal dies insolvent, or is absent, is, that not to afford relief in such cases, would be to have a right without a remedy. We conclude then, that the remedy in Equity results from the necessity of the case, and is commensurate with the exigencies of the case, whenever this jurisdiction is applied to for relief.

But it is argued that, as against the securities, there can be no *right, any where,* until a devastavit be first established against the principal; but we apprehend, that in the eye of the law, the *obligation* of the security, as well as the *rights* of the heir or legatee, date from the breach of the bond; and that so soon as the waste

is actually committed by the principal, the right, at the same instance, accrues to remuneration out of the security, because such is his contract. What was the undertaking of the obligors to the bond? That the principal should well and truly discharge his duty, according to law and the trust reposed in him. If, then, a devastavit has, in fact, been committed, the parties are responsible; and the only difficulty in a Court of Law is, that owing to its particular mode of procedure, the conviction of the principal must first be had before the securities can be proceeded against in that tribunal.

Ought, then, the demurrer to the bill to have been sustained? It admits that Mercer, the administrator, had received and wasted, or appropriated to his own use, a large amount of assets belonging to the estate of Nelms; that the complainant is unable to establish the *amount* of said defalcation, or the *time* when it took place—whether during the liability of Peak or subsequent to his discharge—without the discovery which it seeks; and that Mercer has turned over to some one or more of the second set of securities, property and effects belonging to the estate, of the nature and value of which the complainant is ignorant, and that Mercer is wholly insolvent.

We are of the opinion, that a Court of Law, under the actual circumstances of this case, although it might have, possibly, general jurisdiction over the several branches of it, into which it would be ramified, could not afford a full, adequate and perfect remedy to the party.

[2.] And *first*, we should be inclined to hold, that the jurisdiction might, in this case, attach in Equity, solely on the ground of discovery. By demurring, the defendant admits that the averments in the bill, as to the necessity of this discovery, are true, and not a mere colorable disguise for the purpose of changing the forum of litigation. The discovery sought, then, being indispensable as proof, the complainant being unable to establish the facts charged in the bill by other testimony, and the relief sought being of an equitable nature, the jurisdiction in Equity should be retained.

[3.] But *secondly*, the charge that property or money belonging to the estate, the amount and value of which are unknown to complainant, have been turned over to the second set of securities, or some of them, and which the complainant is entitled, as

administrator, *de bonis non*, specifically to reclaim, and which, if recovered, would reduce the liability of all the securities *so much*, presents an additional reason why Chancery should not decline jurisdiction.

But we pass by these considerations, and would prefer to put this opinion entirely upon the ground of there being two sets of securities; and I would remark, that this proceeding would seem to be required for the sake of the securities themselves. The principal has no interest in fixing correctly the *time* when the devastavit was committed. He would most likely be governed by prejudice or mere caprice in this matter. Usually he would, in all probability, side against the *first* securities, as the necessity of giving a new bond is superinduced by their complaint. The real controversy, therefore, is not between the heir, legatee or creditor, and the principal, but between the different sets of securities. When their liability, then, is about to be fixed, *presumptively* if you please, it is reasonable that they should be heard; and in order to this, they must be made parties. Indeed, upon the simplest elementary principles, every person at all interested in the event of the suit, or necessary to the relief sought, should be made a party, in order to enable the Court to settle the rights of all, and to make a complete and definitive decree. 2 *Paige,* 278. 9 *Cowen,* 320. 3 *Johns. Cas.* 318. 1 *Johns. Ch. R.* 349. 2 *Bibb,* 184. 2 *A. K. Marsh.* 501. *Ib.* 260. *Penn. Rep.* 299. *Mitf. by Jeremy,* 144. *Barton,* 31.

But Mr. Peak, and all others like situated, might say, as he does now, through his counsel, " We have not asked this protection—we are competent to take care of ourselves." Our next position is, that the interest of the *complainant* makes it proper, if not imperative, on Courts of Equity to furnish this remedy.

Suppose the administrator, *de bonis non*, had filed his bill against the principal alone, as it is insisted he should have done, relying upon the discovery which he obtains, to establish both the *amount* of the devastavit and the *time* when it was committed, and it is located by the decree during the liability of the *first* securities. A suit is then brought upon the bond to charge them with the recovery. Not having had their day in Court before, they come in, and prove conclusively that the defalcation did not occur until after their discharge. Of course they are acquitted, and the complainant is remediless; for by the terms of the decree, the second

securities stand exonerated, and the complainant is estopped by it; and this is no improbable case—it would happen constantly. Even if the finding discharging the other set of securities, could be got round in a suit against them, the very same result might follow; for different Juries might, and frequently would, arrive at variant results, even upon the identical same evidence.

Indeed, if this proceeding, bringing all the parties before the Court, and ascertaining and fixing, not *prima facie* only, but *permanently,* the liability of the several sets of securities, cannot be supported, I should consider the rights of those interested in an estate greatly jeopardized, if not entirely destroyed; and this practice will not prejudice the securities. The decree can and should be so moulded, as to afford to them the exact measure and mode of redress and protection guaranteed by the Act of 1820. The securities being in Court, will of course be bound by the decree; but still the *devastavit* must not only be made out against the principal, but the form of the finding, and of the execution issuing thereon, may be so shaped as to operate, first, against the assets of the estate, if to be found, and if none, then against the individual property of the principal, and only against the securities *eventually.*

What greater indemnity could securities ask? Not a hair of their head can be hurt, until all redress against the principal is unavailable. They are entitled, I repeat, to nothing more nor beyond this, under the Act of 1820. Does not such a course, then, commend itself in every view of it, shielding the rights and interests of all parties, and saving a multiplicity of actions, an object never to be disregarded by Courts. And, it occurs to this Court, that in the absence of any precedent, this is just one of those cases where all have such an interest in the common subject matter of litigation, as makes it necessary and proper to convene them all together, to attend to investigations in which they are all so materially interested.

I do not deny but that it is competent and desirable for the Legislature to authorize all this to be done *at Law.* Until such relief is granted, however, we should hesitate long before we could obtain our consent to dismiss a bill, founded upon the facts which this embodies.

And we are glad to find that this is no new or untried way; it is an old and beaten track.

In Equity, says Judge *Lomax*, (*Treatise on Ex'rs and Adm'rs,* *v.* 1, 180,) a legatee has always been considered as entitled to make the administration bond a part of his bill, and to seek his recovery, in the first instance, against the obligors, because the decree can be made so as to operate against the executor in the first instance, and an account of the assets can be taken at once.

And again, (*Id.*) says the same writer, in a suit which was brought in Equity by a legatee, and administrator, *de bonis non,* of the deceased, against the representatives of the securities of a deceased executor, charging mal-administration of the executor, in his time, and seeking an account and relief, the Court was clearly of opinion that where an executor died, without any personal representative, the Court of Equity might, at the suit of a legatee, and without any previous suit having been brought against the executor, to convict him of a devastavit, convene the securities of the executor, or their representatives, and the persons interested in any estate which the executor may have left, and make the securities liable for any misapplication or wasting of the assets, which should be established in the progress of such suit.

*Moore et al. vs. Walker's Heirs,* (1 *A. K. Marsh. R.* 488,) was a bill filed by the heirs of Walker against his executor and his surety, for the recovery of that portion of the estate of their ancestor, to which, under his will, they were entitled. It was objected to the jurisdiction of the Court, that the remedy should have been sought by action at Law. To this the Court of Appeals answered : " The doctrine contended for cannot be permitted to prevail; for whatever may be the correct doctrine in a proceeding *at Law,* by the creditors of the testator, the Chancellor, when applied to for the purpose of distribution, as he will not do things by halves, but delights in preventing multiplicity of suits, and possesses the power of adapting his decrees to the substantial justice of the case, should, as he will, regardless of the failure in not having previously brought another suit against the executor, hear, and finally determine, the liability of the security, as well as that of the principal in the bond."

*Taliaferro's Ex'rs et al. vs. Thornton and Wife,* (6 *Call,* 21,) was a bill precisely similar to this, except that it was filed by a *legatee* instead of the administrator *de bonis non.* Some of the defendants there, as here, demurred to the bill, alleging that the

complainants had a remedy at Law.   But the Court held that the application to the Court of Equity was proper, "*especially when the parties were so numerous, and the want of a discovery clear.*"

In *Hutchcrafts vs. Stuart's Heirs,* (1 *Monroe's R.* 207,) the same objection was made and overruled by the Court.   They say : "Equity has always entertained jurisdiction in such cases, and will compel the trustee to account for the estate in his hands.   If that sum is secured by bond and security, we have no doubt but that the jurisdiction, as to the principal, will draw after it the security ; it is more beneficial to the surety that it should do so.   He then has the opportunity of seeing that the account is correctly settled. If he is no party to the suit in Chancery, and can only be sued at Law, after the account is settled, one of two inconveniences must follow :  either he must, when sued at Law, be bound by the decree to which he was not a party, and when the account might be settled erroneously ; or, not having been a party, he would not be bound at all, and could unravel the accounts in the action at Law, when brought, and compel the plaintiff to re-travel over the whole settlement.   It is better, therefore, that he should be made a party at once, when he can see to his interest; and when the Chancellor thus has the possession of the matter, to avoid circuity of action or multiplicity of suits, he will decree the amount to be paid at once."

Chancellor *Walworth,* in *Cuddeback vs. Kent,* (5 *Paige,* 92,) says that it is impossible to add to the force of this reasoning by Judge *Mills;* that the prosecution of a suit against the principal alone, in the first instance, who has squandered the estate and become insolvent, would be worse than useless, as it respected the sureties, and would subject them to the expense of double litigation ; that it would, at the same time, be a violation of the settled principles of Chancery, viz :  that a needless multiplication of suits is neither to be encouraged or allowed; that if, upon the hearing of the cause, it should be found that the principal had faithfully discharged the trust committed to him, according to the condition of the bond, the bill would be dismissed, as to all the defendants, with costs.   If, on the other hand, there had been a breach of trust, the Court could make the appropriate decree for the payment, by the guardian, of what may be found due, with a

decree over against the sureties, to the extent of their liability, if the whole cannot be collected of the principal debtor.

I ask, how much is the argument strengthened, when there are two sets of securities, with conflicting liabilities ?

Our conclusion, therefore, from the entire case is, that the demurrer should not have been sustained; that it was not necessary, by previous proceedings instituted against Mercer, to establish that the assets had been wasted; but that under the facts of this case, it was most convenient and proper to convene all at once into a Court of Equity, where all necessary accounts can be taken, and diverse and conflicting interests adjusted; and all persons liable to pay, brought before the Court and charged at once, so as to avoid perplexity, circuity and loss.   And that the securities may sustain no detriment from this course, the decree can be specially framed, so as to operate against the principal in the first instance.   On the contrary, we believe that it will prove beneficial to the securities, as it gives them early notice of the demand, and thus enables them to take prompt and efficient measures for their own safety.   For these reasons, we think that the objection to the jurisdiction should not have been allowed.

The decree, consequently, of the Circuit Court is reversed, and the proceedings remanded.