## K. J. LOVE ET AL. v. T. A. KEOWNE ET AL.

58  191
82  656
58  191
86  395
58  191
87  400

(Case No. 1277.)

1. ACTION — MULTIFARIOUSNESS — PARTIES. — In an action by heirs against the administrators on the estate of the ancestor and their sureties, and the sureties on a second bond executed under art. 1292, Pasch. Dig., it was alleged that a large sum of money, the amount not being known, was in the hands of the administrators when the second bond was executed; that large funds of the estate were invested in railroad stock by one administrator while the first bond was in force, in connection with sureties on the second bond, before the same was executed, and in their own name, which were held as collaterals to indemnify the second securities from loss on their suretyship; that all the papers of the estate were lost, and though the amounts wrongfully converted under each of the two bonds could not be stated, about $17,000 was converted under each bond. They prayed that the amounts of money wrongfully converted, for which each set of sureties were liable, might be ascertained, and for judgment for the railroad stock against the second set of securities, for an account, discovery and general relief. *Held,*

(1) There was no misjoinder of parties or of causes of action.

(2) A joinder of both sets of securities as defendants in one action was not only proper for the protection of those interested in the estate, but also for the adjusting of equities existing among the sureties themselves.

(3) The joinder was proper to avoid a multiplicity of suits.

(4) The second set of securities were connected with the subject matter of the suit before their liability as sureties began, on account of their conversion of the assets of the estate; and also afterwards, in the wrongful appropriation of a trust fund, which not only the heirs may follow, but which the sureties on the first bond may follow for their own protection in adjusting liabilities between the two sets of sureties.

(5) A bill of discovery, though unknown to our practice in Texas, *eo nomine,* is practically given under the statute, and a resort to its provisions, so as to make the answers of each defendant under oath evidence in this case, approved.

(6) The second set of sureties having, before their liability as such begun, wrongfully connected themselves with the subject matter of the suit, which was the property of the estate, are liable in connection with the sureties upon the first bond, without reference to the bond which they afterwards executed.

(7) In ascertaining who are proper parties to a suit, it is not indispensable that all the parties should have an interest in all the matters in controversy; it will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others.

(8) One who improperly obtains from a trustee a part of the trust estate is a proper party to a suit against the trustee to enforce the purposes of the trust.

(9) The second set of sureties, holding the proceeds of funds thus invested in railway stock, on account of which funds in part the liability of the first set of sureties depends, cannot be permitted to appropriate the same in discharge of their own liability, to the prejudice of the first set of sureties.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty.

Suit by Love *et al.,* alleging that M. J. Love, H. C. Fitzpatrick, Thalia Dubois, F. W. Fitzpatrick, Mahone Fitzpatrick, Cornelia

Horton, Nannie Dozier, Thomas Slaughter, William Slaughter, Thalia Slaughter, George Slaughter, represented by W. H. Poland, assignee, and Carrie Reese, who were plaintiffs, and T. A. Keowne, one of the defendants, were the only heirs at law of Rene Fitzpatrick, deceased; that said Rene died in December, 1866, at his residence in said county; that A. Pope and T. A. Jones (now Keowne) were, in July, 1867, by the county court of said county, appointed administrators of his estate, took the oath and gave a joint bond, with the defendants, John F. Womack and J. H. Lee, and one W. R. D. Ward, as sureties, in the sum of $60,000, which was approved and letters issued to them; that Ward died in May, 1871, and defendants A. G. Ward and A. G. Turney were appointed and were then acting as administrators of his estate; that after the issuance of letters to Pope and Jones, Pope, as administrator of Rene, in July, 1867, received $18,000 in United States gold coin, $10,000 in Spanish doubloons, and $5,000 in United States currency, the property of the estate, and in August, 1867, converted the same to his own use, and charging thereby a breach of the bond.

That in July, 1869, the county court, by an order on its minutes, required Pope and Jones (now Keowne) to give a new bond as administrators; that in obedience thereto, on or about that date, they executed a joint bond as such administrators in the sum of $45,000, with M. J. Hall, A. M. Burnham and R. H. Hargrove as sureties, which was approved and filed; that M. J. Hall died in May, 1871, leaving a will and a large estate, and that M. J. Hall, junior, defendant, was appointed and was acting as independent executor of same; that A. M. Burnham died, without leaving any children, in May, 1872, but leaving the defendant A. C. Burch, his surviving wife, and a large estate of community property, which was in possession of said Burch; that R. H. Hargrove died in 1879, leaving a will and a large estate, and defendant Ann E. Hargrove was appointed and is now acting as independent executor of the same. That at the time said new bond was given, said Pope had in his hands, as one of the administrators of said Rene, $20,000 in United States gold, $10,000 in Spanish doubloons, and $5,000 in United States currency, and that he on or about that date converted the same to his own use, and charging thereby a breach of the new or last bond.

That Pope died in May, 1872, while one of the joint administrators, without having settled the estate, and J. H. and W. H. Pope were appointed his administrators; that the estate had never been settled by either of the administrators; that A. Pope was at that

time indebted to the estate in the sum of $50,000; that defendant Keowne, who was fully aware of such indebtedness, failed and refused to prosecute any suit against his legal representatives or sureties for the money; that those sums of money and other claims were the only property of the estate, except a tract of land in the possession of the heirs; that the ownership of the estate was in litigation between the heirs of said Rene until June, 1875; that the litigation was instituted in the district court of Harrison county against M. J. Love, H. C. Fitzpatrick and Mahone Fitzpatrick, by the other heirs; that the plaintiffs and defendants in that suit were children of different marriages of said Rene; that in June, 1875, a decree was rendered adjudging the estate to belong to the heirs in equal shares, and appointing the district clerk an auditor to take an account as to the amount due each heir, and report the same to the court; that the surviving administrator, Jones, refused to furnish any data by which an account could be taken; that it had never been taken; that all the papers relating to the estate had been lost or destroyed; that the plaintiffs were unable to allege how much of the estate was converted under the first bond and how much under the last bond; that there were no debts and no necessity for administration; that the surviving administrator, T. A. Keowne, was, on the 21st day of November, 1881, removed from said administration, by the county court.

The defendants answered by general and special exceptions and a general denial, and the plea of the statute of limitations, to which was replied coverture, infancy, and idiocy as to some of the plaintiffs. The exceptions being in part sustained by the court, the plaintiffs filed a trial amendment, alleging that at the time Pope and Jones made the new bond, Pope had, as administrator of said estate, in his hands about $17,500; and that during the time Pope administered the estate under the first bond, he became, in connection with Hall, Burnham and Hargrove, the sureties on the new bond, a dealer in stocks, and they invested about $17,500 of the estate funds in Southern Pacific Railroad stocks; and his sureties, being uneasy, required him to give a new bond; and that Hall, Burnham and Hargrove became his sureties in the new bond upon his depositing with them as security said stock, which he did; that same was of the value of $25,000, and said securities converted the same, and prayed for an account to be taken as to the amount converted on each bond, for a discovery, and for general relief.

To this pleading the defendants urged, among others, the following exceptions:

1st. That the petition showed a misjoinder of parties defendant, it being improper to join the sureties on the first bond with the sureties on the second bond.

2d. Said petition failed to allege from what source, or from whom, the additional sums of money were received by Pope. The court sustained exceptions, and dismissed the case, rendering judgment final for the defendants. The plaintiffs excepted and gave notice of appeal.

The first and second assignments of error, which will be considered together, are as follows:

1st. The court erred in sustaining the pleas in abatement of the defendant setting up a misjoinder of parties defendant and causes of action.

2d. The court erred in sustaining the exceptions of the defendant as to a misjoinder of causes of action and parties defendant.

The third assignment of error is stated in opinion. The court below rendered a judgment dismissing the suit.

*Geo. Lane, A. L. Hightower* and *T. P. Young*, for appellants.

*W. & N. A. Stedman*, for appellee A. E. Hargrove, and *James Turner, John T. Pierce* and *L. Aubrey*, for appellees John H. Lee, John F. Womack, A. G. Ward and A. G. Turney.

I. There was a misjoinder of parties defendant. Neither courts of law nor of equity will take cognizance of distinct, separate and independent liabilities of different defendants in one suit, there being no connection nor collusion between them charged. Clegg *v.* Varnell, 18 Tex., 301; Frost *v.* Frost, 45 Tex., 340–41; Johnson *v.* Davis, 7 Tex., 174; Saxton *v.* Davis, 18 Vesey, 79; 1 Chitty on Pleadings, p. 44, title "Misjoinder."

II. The liabilities of sureties on first and those on new bond were not joint and common, but several and distinct.

III. The administrators, by order of court, entered into new bond in July, 1869, and sureties on first bond were thereby relieved from further liability; and sureties on second bond thereafter became liable for any future default. Pasch. Dig., vol. 1, sec. 1292.

IV. This being an action on administrators' statutory bonds, is an action at law and not in chancery. Pasch. Dig., vol. 1, secs. 1282–83; Wright *v.* Leath, 24 Tex., 24; Jackson & Co. *v.* The Bourbon Justices, for the use of Robinett Heirs, 2 Bibb (Ky.), 293.

V. Although said second proposition of appellants may be correct as an abstract proposition of law, yet it has no application when one

set of defendants, distinct from another set of defendants, are not charged to have received into their hands any of the trust funds in controversy.

VI. A petition filed against several persons concerning distinct things or acts is demurrable.

VII. Pleadings must be certain. General allegations, independent of time, place, persons or other circumstances of identity or certainty, are insufficient, and the special demurrer on this ground should have been, as it was, sustained. Mims *v.* Mitchell, 1 Tex., 443; Sayles' Pleadings, sec. 27, and authorities cited.

*Alex. Pope,* for appellees John H. and W. H. Pope.

I. The court did not err in sustaining the pleas in abatement of the defendants setting up the misjoinder of parties defendant and causes of action. Clegg *v.* Varnell, 18 Tex., 304; Frost *v.* Frost, 45 Tex., 341; J. C. DeGress *v.* R. B. Hubbard *et als.,* Tex. Law Jour., vol. 4, No. 5, pp. 717, 718; Adams' Eq., p. 702; Story's Eq. Pl., sec. 539; Sterling *v.* Hensen, 1 Cal., 478; Newland *v.* Rodgers, 3 Barb. Ch., 432.

II. The court did not err in dismissing the suit and rendering judgment final against the plaintiffs and in favor of defendants. Jones *v.* Smith, 5 Paige, 137; Boyd *v.* Hoyt, 5 Paige, 65; 6 Paige, 23; Woodruff *v.* Young, 43 Mich., 548; Am. Law Reg. (O. S.), vol. 6, p. 315; Williams and Wife *v.* Coward and Wife, Same *v.* Same, Am. Law Reg. (O. S.), vol. 11, p. 516; Fuller and Wife *v.* Railroad Co., Am. Law Reg. (O. S.), vol. 1, p. 567.

Bonner, Associate Justice.— The third error assigned in this case is, "that the court erred in dismissing said suit and rendering judgment that the plaintiffs take nothing by their said suit, and that the defendant go hence without day," etc.

There can be but little doubt but that this assigned error is well taken as to the defendant T. A. Keowne. The petition set forth a good cause of action against her, and to that extent, at least, it should have been entertained. For this error the judgment must be reversed.

The first and second assigned errors will be considered together, and are as follows:

"1. The court erred in sustaining the pleas in abatement of the defendant setting up a misjoinder of parties defendant and causes of action."

"2. The court erred in sustaining the exceptions of the defendant as to a misjoinder of causes of action and parties defendant."

These present the principal question in the case.

It appears that the second bond was not given as an additional one upon the motion of the chief justice of the county court or of any party interested in the estate under articles 1290–1, Paschal's Digest, because the first bond was insufficient, but was given as a new bond under article 1292, which provides that when such new bond is given and approved, the former sureties shall be discharged from all liability for the future acts of the administrator.

Under the view we take of the case, it does not become necessary to decide how far, had this been simply an action at law, and in a court restricted to common law jurisdiction, the pleas in abatement and the demurrers should have been sustained. In our opinion, to the extent that the suit sought for an account and discovery of the matters of the administration, the papers having been lost, and the facts lying peculiarly within the knowledge of the administrator; and as to the sureties to the second bond, to the extent that it sought to trace into their possession and make them account therefor, certain railroad securities, which it is alleged were, during the time of the first bond, bought by one of the administrators in connection with them, with the funds of the estate, and which securities came into their hands with a knowledge of their trust character, it so far partook of a proceeding in equity as to give the court jurisdiction of it as such.

For a long time, at least since near the close of the reign of Charles II, courts of equity have exercised jurisdiction in cases of the administration of estates. Judge Story, in his learned commentary upon Equity Jurisprudence, says that one ground of this jurisdiction is founded on the principle that it is the duty of the court to enforce the execution of trusts; and that the executor or administrator who has the property in his hands is bound to apply it to the payment of the debts and legacies, and to apply the surplus according to the will of the testator, or, in case of intestacy, according to the statute of distributions. 1 Story's Eq. Jur., § 532.

In this connection he says that trusts are enforced not only against those persons who are rightfully possessed of the property as trustees, but also against all persons who come into the possession of the same with notice of the trust. Id., 533.

He further says that other auxiliary grounds also exist, such as the necessity of taking accounts and compelling a discovery, and the consideration that the remedy at law, where it exists, is not plain, adequate and complete. The jurisdiction, therefore, now assumed by courts of equity to so wide an extent over all administrations and

the settlement of estates in cases of testacy and intestacy, is not (as it would seem) exclusively referable to the mere existence of a constructive trust (which is often sufficiently remediable at law), but is referable to the mixed considerations already adverted to, each of which has a large operation in equity. Also, that in many cases besides those directly mentioned, it is impossible for any other than a court of equity to administer full and satisfactory justice among all the parties in interest. Id., 534 and 543.

Under several of our decisions it has been held that in certain cases our district courts had, in matters pertaining to estates of deceased persons, the jurisdiction of a court of chancery in England. Smith v. Smith, 11 Tex., 102. In Rodgers v. Kennard, 54 Tex., 30, many of these cases are collected and reviewed.

In tracing out this ground of equity jurisdiction, Judge Story says that the objection that the spiritual courts had full authority under the English statute of distribution to decree a distribution of the residue, and hence that a court of equity could not exercise the jurisdiction, was held not good on demurrer, there being no negative words in the act of parliament which would take away such jurisdiction. Citing Matthews v. Newby, 1 Vern., 133, and other authorities. 1 Story's Eq. Jur., § 542.

To the same effect is Gould v. Hays, 19 Ala., 438, and other authorities cited in note 1, top p. 566, Adams' Equity (3d Am. ed.).

Although a bill of discovery, technically so called and known in equity practice, is not known to our practice, yet we have a statute which is intended to answer the same purpose. That statute authorizes a party to a suit to make a witness of the opposite party, or to propound interrogatories to such party, and which, if not answered, shall be taken as confessed. R. S., arts. 2239–2244; id., arts. 2216, 3748–3754.

In Cronin v. Gay, 20 Tex., 460, it is decided that the statute prescribes this mode of discovery as auxiliary to a regular suit, but not as an independent remedy disconnected from such suit. It has also been decided that executors and administrators are within the meaning of the statute (Blackman v. Green, 17 Tex., 327); and that a plaintiff may propound interrogatories to one of several defendants, and the answers of such defendant may be read in evidence against his co-defendant, the required notice having been given. McGown v. Randolph, 26 Tex., 496.

One of the objects sought in this case was a discovery, which it seems must have been very material under the embarrassments thrown around the case. These, to a considerable extent, seem,

under the allegations, to have been the fault of the administrator. It is alleged that, by the failure to make proper accounts, the plaintiffs were unable to ascertain the respective liabilities of the two sets of sureties. For this the administrator and the sureties, rather than the plaintiffs, should be held chargeable. Under our decisions it was not incumbent on the plaintiffs to have first compelled the administrator to have made final statement of the administration account before suit on the bond, and by which suit all parties before the court would be bound. Ponton v. Bellows, 22 Tex., 681; Francis v. Northcote, 6 Tex., 185.

The jurisdiction of the court below was one of blended law and equity, and the policy of our law has ever been to avoid a multiplicity of suits. If separate suits had been brought and a discovery sought in each, the proceedings, evidence and judgment in the one would not have been binding upon the sureties in the other, and between the two, the plaintiffs may have failed to obtain the relief, if any, to which they may be entitled. In the suit as brought, all the parties in interest were before the court. The general subject matter and object sought were the same; the plaintiffs claimed relief in the same general right, and the proceedings and decrees could have been adjusted to the respective rights and interests of all the parties to the suit, and would have been binding upon them.

It has been found impracticable to lay down any positive general rule as to what will or will not constitute multifariousness, but the courts have wisely left the question as one of convenience, to be decided according to the peculiar circumstances of the case. As said by McLean, J., in Gaines v. Chew, 2 How. (U. S.), 619: "Every case must be governed by its own circumstances, and as they are as diversified as the names of the parties, the court must exercise a sound discretion on the subject." It is said in the notes to the leading case of Fellows v. Fellows, 4 Cowen, 682, in 15 Am. Decisions, 428, that perhaps the best general rule that can be laid down is that stated by Wilde, J., in Dimmock v. Bixby, 20 Pick., 377, that the objection of multifariousness does not hold "where one general right is claimed by the plaintiffs, although the defendants may have separate and distinct rights."

There are numerous authorities to the effect that, "to render a bill multifarious, it must contain not only separate and distinct matters, but such that each entitles the complainant to separate equitable relief. It is not so if it be single as to the subject matter and object thereof, and the relief sought, if all the defendants are connected, though differently, with the whole subject of dispute." Note

2, top p. 694, Adams' Equity (3d Am. ed.), and notes to Fellows *v.* Fellows, 15 Am. Decisions, 427, both citing numerous authorities. Morris *v.* Ashley, Dal., 619; Dobbin *v.* Bryan, 5 Tex., 276; Clegg *v.* Varnell, 18 Tex., 294.

In our opinion, the first and second assigned errors are also well taken.

For the errors above indicated, the judgment below is reversed and the cause remanded.

Reversed and remanded.

[Opinion delivered October 27, 1882.]

*James Turner, John T. Pierce* and *L. Aubrey*, on motion for rehearing.

I. That there was a misjoinder of parties defendant, in this, that your petitioners are joined with other persons with whom they have no interest in common, with whom they are not jointly liable, and whose interest in the subject matter is conflicting with that of your petitioners. Clegg *v.* Varnell, 18 Tex., 301; Frost *v.* Frost, 45 Tex., 340, 341; Johnson *v.* Davis, 7 Tex., 174; 18 Vesey, 79; 1 Chitty's Pleading, title "Misjoinder."

II. The proper and necessary defense of said action by your petitioners makes it to the interest of your petitioners to antagonize the sureties of the second bond, their co-defendants, and to show, if they can, that any default or conversion, if such there was, was not while your petitioners were sureties, but after their discharge; and the sureties on the second bond would be equally interested in proving the conversion to have taken place under the first bond, while the plaintiffs could stand by and take advantage of this conflict between the defendants. Dilly *v.* Dorly, 2 Ves. Jr., 486; Bouv. Law Dic., title "Misjoinder;" Ellicott *v.* Welch, 2 Md. Ch., 242.

III. There can be no common judgment, and the two sets of defendants are not liable under a common undertaking; the bond under which your petitioners are charged having expired before that under which their co-defendants are charged came into existence. Whelen *v.* Watmough, 15 S. & R., 158; Pasch. Dig., vol. 1, 1292.

IV. The objection was a misjoinder of parties defendant as well as that there was a misjoinder of actions, and your honors seem to have come to the conclusion that the latter objection was the only one made. The petition was multifarious because two distinct actions were embraced, and there was a misjoinder of defendants for the reason above stated. DeGress *v.* Hubbard *et al.*, Tex. Law

Jour., June, 1881, Watts, J.; Clegg v. Varnell, 18 Tex., 301; Frost v. Frost, 45 Tex., 340, 341; Johnson v. Davis, 7 Tex., 174; Chitty's Pleading, title "Misjoinder."

## ON MOTION FOR REHEARING.

STAYTON, ASSOCIATE JUSTICE.— In the disposition of the motion for rehearing in this cause, all the members of the court concur in holding that the motion should be overruled. In stating some of the reasons which influence this action, no inquiry will be made into the question as to whether the sureties upon the last bond may not be responsible, notwithstanding the sureties upon the first bond may also be responsible, for that which, by the inventory, reports and decrees of the court, appeared to be in the hands of the administrators at the time the last bond was executed, notwithstanding some of such assets of the estate may have been misappropriated prior to the execution of that bond, for this question has not been argued, and we would not undertake to decide it without, as it is not necessary to do so in the disposition of this motion.

The pleadings, as amended, aver that a large sum of money, together with other property, went into the hands of the administrators, and that a portion of that money (the exact amount of which the plaintiffs were unable to state) was in the hands of one of the administrators at the time the second bond was executed.

The pleadings further allege, that, prior to the execution of the second bond, but while the first was in full force, one of the administrators, acting partly for himself and in association with the sureties on the second bond, invested a large portion of the money of the estate in the purchase of stock in the Southern Pacific Railroad, which stock was held by the administrator in his own right in part, and as to the residue in right of himself and associates; that about $17,500 of the money of the estate was so invested; that afterwards the sureties upon the first bond required a new bond to be given, which was done, Hall, Burnham and Hargrove becoming the sureties, under an agreement between them and the administrator that the administrator would deposit with them, as security against loss by his acts, sufficient security to indemnify them.

It was further charged, that, in pursuance of said agreement, the administrator did place in the hands of the sureties upon his second bond, stock of said railroad of the value of $25,000, which stock was purchased by the administrator, as his sureties well knew, at the time they received the same, with the funds of the estate, and that said sureties afterwards converted said stock to their own use;

that at the time the second bond was given, one of the administrators had in his hands belonging to the estate a large sum of money, as well as the railroad stock. That they are unable to state, on account of the loss of all the papers pertaining to the estate, the exact amount converted by the administrators under the first or second bond; but they allege to the best of their information about the sum of $17,500 was converted under the first, and a like sum under the second bond. The petition prays that the amount for which each set of sureties may be liable be ascertained, and for judgment; and they also pray judgment against the sureties upon the second bond for the value of the railroad stock, for general relief, for an account and for discovery.

The main grounds relied upon for a rehearing are based upon a supposed misjoinder of parties and of causes of action.

The breach of each of the bonds doubtless constitutes a cause of action against the makers of the several bonds, ordinarily separate and distinct; but the relation of two sets of sureties may be such to the subject matter of litigation, which in this case is the estate, that came into the hands of the administrators, that they may be joined in one action, and in which it may become eminently proper that all the sureties should be joined, not only for the protection of those interested in the estate, but also for the purpose of adjusting the equities existing among the sureties themselves.

In a court of equity this is always desirable, in order to do complete justice between all parties without a multiplicity of suits.

The demurrer admits the *devastavit;* that by reason of the loss of the papers of the estate the plaintiffs are unable to ascertain with accuracy the extent of the *devastavit* prior to the time the second bond was executed; and that prior to the execution of the second bond, one of the administrators, in connection with those persons who became sureties upon the second bond, united in a misapplication of a part of the trust estate, and that these sureties, for their own indemnity, received the proceeds of such misapplication and have applied the same to their own use.

This state of facts connects the last sureties with the subject matter of this suit at a time prior to their becoming sureties at all; and also connects them after they became sureties with a trust fund which not only those interested in the estate may follow, but which the sureties upon the first bond may follow for their own protection; and upon the plainest principles of equity procedure, it would seem that they should all be joined, to enable the court to make a decree that would be just and binding upon all.

While it is true that a bill for discovery alone cannot be maintained in this state, yet as an auxiliary remedy it is practically given, and, under the peculiar facts of this case, the importance and even necessity of having the answers of such of the defendants as may have knowledge, so taken by interrogatories that the answers may be binding as evidence upon each and every one, cannot be overestimated.

In the case of Alexander *v.* Mercer *et al.*, 7 Ga., 553, which was a case in many of its facts identical with this, it was held that "this is just one of those cases in which all have such an interest in the common subject matter of litigation as makes it necessary and proper to convene them all together, to attend to investigations in which they are all so materially interested."

In illustrating the propriety of this in the case above cited, which was a case against an administrator and two sets of sureties, in which it was alleged that the second set of sureties had received a portion of the assets of the estate, and that the extent of the *devastavit* during the period which each bond was effective could not be stated with certainty, Lumpkin, J., said, after considering other questions in the case, "But we pass by these considerations, and would prefer to put this opinion entirely upon the ground of there being two sets of sureties; and I would remark that this proceeding would seem to be required for the sake of the securities themselves. The principal has no interest in fixing correctly the *time* when the *devastavit* was committed. . . . The real controversy, therefore, is not between the heir, legatee or creditor, and the principal, but between the different sets of securities. When their liability, then, is about to be fixed *presumptively*, if you please, it is reasonable that they should be heard; and in order to do this, they must be made parties. Indeed, upon the simplest elementary principles, every person at all interested in the event of the suit, or necessary to the relief sought, should be made a party, in order to enable the court to settle the rights of all, and to make a complete and definitive decree."

We, however, base our action in this case upon the further broad ground, that all the sureties are proper parties in this case: 1st, for the full protection of the plaintiff. 2d, for the full protection of the first set of sureties. The first set of sureties as well as the second, are liable to the plaintiffs, at least for the *devastavits* committed during the times covered by their respective bonds, and this through the obligations imposed by their respective bonds; and the sureties upon the second bond are liable to the plaintiffs without regard to their bond, for and on account of their having, if the aver-

ments of the petition are true, appropriated, in connection with one of the administrators, a portion of the assets of the estate, prior to the time they became sureties, in the purchase of railroad stock, which they must be held to have held in trust for the estate.

Having thus connected themselves with the subject matter of controversy, *i. e.*, with the property of the estate, they are liable in connection with the sureties upon the first bond, without reference to the bond which they subsequently executed, at least to the extent of the assets which they so misappropriated, or the value of the property which they acquired by purchase with the funds of the estate. Thus being proper parties, and having become sureties upon the second bond, holding the railroad stock as indemnity to them, they must be held properly parties to this suit for all purposes; for "it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matters in the suit and they are connected with the others." Story's Equity Pleading, 271*a*, 155.

It may be laid down as a general rule, that one who so participates in a transaction by which he obtains improperly from a trustee a part of the trust estate, is a proper party to a suit against the trustee to enforce the purposes of the trust, and this even though the greater part of the trust estate is still in the hands of the trustee (Story's Equity Pleading, 538; Attorney General *v.* Craddock, 3 Mylne & Craig, 85); in the course of which Lord Cottenham said: "Would it ever occur to any one to file one bill against the trustee for one part of the transaction, and another bill for another part of the transaction? Then is a party entitled to raise this objection who has made himself, by uniting with the trustee in a breach of trust, part and parcel of the transaction? The object of the rule against multifariousness is to protect a defendant from unnecessary expense; but it would be a great perversion of that rule if it were to impose upon the plaintiffs and all of the other defendants the expenses of two suits instead of one. The object of the suit is to establish that Craddock has, by means of the transaction stated in the information, become a trustee of a part of the charity estate. Suppose he had been an actual instead of a constructive trustee, and the object was to have accounts taken and an administration made of the whole of the charity property; could he object on that ground that he was a trustee of only a part of the charity property, and that he could not be made a party to a suit relating to the whole? If that were to prevail, it would be directly against the decision of the vice chancellor, which I affirmed in

Campbell v. Mackay, 1 Mylne & Craig, 603. There some of the parties were trustees of part only of the trust property in question, but the trusts were so united by the allegations of the bill that the whole was made one fund; and first the vice chancellor, and afterwards myself, were of opinion that in such state of circumstances the objection of multifariousness could not be sustained. If that be so, according to the decision in Campbell v. Mackay, when the defendant is a trustee only of part, but which part is so blended as to make it improper to separate it, is greater favor to be shown to a person who becomes one of the trustees by joining with another trustee in committing a breach of trust? The doctrine of multifariousness would be carried much too far if that were to be the case."

In the case of Alexander v. Mercer et als., 7 Ga., 553, above referred to, the court said: "But secondly, the charge that property or money belonging to the estate, the amount and value of which are unknown to complainant, have been turned over to the second set of securities, or some of them, and which the complainant is entitled, as administrator de bonis non, specifically to recover, would reduce the liability of all the securities so much, presents an additional reason why chancery should not decline jurisdiction." The right of the plaintiffs in this case to enforce their claim for the railroad stock, specifically, if it yet remains in the hands of the sureties, cannot be questioned.

It is, moreover, the right of the sureties upon the first bond to have the proceeds of the funds of the estate, misappropriated while they were bondsmen, which may have gone into the hands of the sureties upon the second bond with notice of its character, appropriated in discharge of their liability, so far as may be necessary, as between them and the sureties upon the second bond.

Such would certainly be the just rule, and it is not believed that the second set of sureties, if they hold the proceeds of the very fund on account of which, at least in part, the liability of the first set of sureties depends, should be permitted to appropriate the same in discharge of their own liability, to the prejudice of the first set of sureties.

As the parties now stand, such decree may be made in the case as will be final and just between all parties, which could not be done if all the sureties were not before the court. The motion for rehearing is overruled.

MOTION OVERRULED.

[Opinion delivered December 15, 1882.]