LATHAM CO. v. SNELL et al. (No. 8155.)

(Court of Civil Appeals of Texas. Ft. Worth. April 10, 1915.)

1. ACTION 50—PARTIES 51 — MISJOINDER—ORIGINAL PAYEE OF NOTE.

In an action by the indorsee of a note, where the answer alleged that the original payee was still the real owner, and that the maker had a good defense against him and prayed that he be joined as defendant, and that the note be canceled, or if it be found that the indorsee was the owner thereof, that the maker have a judgment against the payee for the amount recovered by the holder, there was no misjoinder of parties or causes of action, after the payee had been brought in.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. 50; Parties, Cent. Dig. §§ 77–82; Dec. Dig. 51.]

2. SALES 398 — REMEDIES OF BUYER — FRAUD—PLEADING.

Where the maker of a note pleaded that it was given for the purchase price of a span of mules which the payee represented to be sound in body and suitable for general farm work, and so guaranteed them to be, but that the representations were false, the pleading sufficiently alleged fraud to warrant the giving of an instruction on that issue.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1137–1139; Dec. Dig. 398.]

3. TRIAL 252—FRAUD—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where the maker of a note alleged that it was given for the purchase price of a span of mules sold to him under misrepresentations, a charge that if the jury found for the maker they should award him the difference between the mules as represented, and their actual market value, was erroneous, where there was no evidence as to the actual market value, and the evidence showed that, though the mules were not as represented, they possessed some value.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. 252.]

4. FRAUD 59 — MEASURE OF DAMAGES — SALE OF MULES.

The measure of damages for fraud in the sale of a span of mules is the difference in the reasonable market value of the animals, if they had a market value, or if not, their actual value at delivery, and the contract price.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. 59.]

5. FRAUD 50 — SALES OF MULES—BURDEN OF PROOF.

Where the buyer alleged fraud by the seller in making a sale of mules, the burden is on the buyer to show not only a right to recover damages, but also the amount of such damages.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. 50.]

6. TRIAL 253 — INSTRUCTIONS — IGNORING ISSUE—AUTHORITY OF AGENT.

Where the maker of a note alleged that it was given to the payee, a corporation, for the purchase price of a span of mules, which were misrepresented by the payee's agent who sold them to the maker, and the payee's pleadings and evidence showed that the mules were the property of the payee's manager and his brother, and were sold by them individually, not as agents of the corporation, and that the note was made payable to the corporation because it was on a printed form, and its name was through oversight not stricken therefrom, but that it was afterwards indorsed to the real payee without recourse, and by them indorsed to the bank which recovered thereon against the maker, a charge that if the jury found that the payee's manager, acting for the payee, made the false representations, they should find against the payee, was erroneous as not requiring a finding that the manager was authorized by the payee to make such sale.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. 253.]

7. FRAUD 52—ISSUES—EVIDENCE—DAMAGES FOR MISREPRESENTATIONS.

Where the maker of a note given for the purchase price of mules, which he alleged were misrepresented to him, did not seek a rescission of the contract, but only damages, evidence that he offered to return the mules was irrelevant.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. 52.]

8. FRAUD 52 — EVIDENCE — DAMAGES FOR MISREPRESENTATIONS.

Where the buyer of a span of mules claimed that they had been represented as sound, when in fact they were weak and diseased, evidence that some time after the buyer had left the farm where the mules were kept, a witness saw a mule's carcass in the pasture, and, which he supposed was one of those mules, but which he did not know what caused its death, was inadmissible, since it was not shown clearly that it was one of the mules in question, nor that its death was due to its weakened condition.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. 52.]

Appeal from Eastland County Court; C. A. Hill, Judge.

Action by the First National Bank of Ranger against W. H. Snell, in which the defendant asked that Latham Company and another be made parties defendant. Judgment for the plaintiff against the defendant Snell, and in favor of that defendant against the Latham Company, and the Latham Company appeals. Judgment as against the Latham Company reversed, and remanded for a new trial.

Earl Conner, of Eastland, for appellant. D. G. Hunt, of Eastland, for appellees.

CONNER, C. J. The First National Bank of Ranger instituted this suit against W. H. Snell in the county court to recover an indebtedness alleged to be due on a promissory note for the sum of $258, bearing interest at the rate of 10 per cent. per annum from its date and executed by said Snell on the 10th day of January, 1911, and maturing in the fall of that year. The plaintiff also sought to foreclose a mortgage lien given to secure the note on two mules and a set of harness described in the petition. The note was made payable to Latham Company at Eastland, Tex., and indorsed "Latham Co. without recourse." The plaintiff alleged that it had been transferred to the bank for a

valuable consideration on April 26, 1911, by Cox Bros. "without recourse."

Among other things, the defendant Snell made L. P. Cox, one of the members of the firm of Cox Bros., and the Latham Company parties, alleging that the note had been given to Latham Company for the purchase of a span of mules sold to him by L. P. Cox, acting as the general manager of the Latham Company, and that said Cox, acting as such general manager at the time, represented said mules to be 11 or 12 years old, and to be sound in body and health, and free from disease, and suitable for general farm work, and so guaranteed them to be. The defendant further alleged that said representations were false; that said mules were very old, were diseased and weak, and unable to perform farm work; that in truth the plaintiff in the suit was not the owner of the note declared upon, but that it was owned either by the said Latham Company or by L. P. Cox; and he prayed as against those parties that the note be canceled, but further prayed that if mistaken as to the ownership of the note, and that it should develop that the plaintiff was entitled to recover by reason of the suit thereon, that he have "judgment against Latham Company and L. P. Cox jointly and severally for such amount as the plaintiff may recover, and for all other and further relief which the law and facts may authorize," etc.

Latham Company answered, urging a number of exceptions to the sufficiency of the pleadings of Snell and also specially denied under oath that L. P. Cox was its agent in the matter of the sale of the mules in question, and alleged that it had no interest or claim to the mules sold to Snell by L. P. Cox, and that Cox had no authority whatever to act for it in making representations concerning the quality or soundness of the mules, or in making any warranty with reference to their condition or quality, or in accepting a note for the purchase price of the mules payable to Latham Company.

A trial before a jury resulted in a judgment for the plaintiff, the First National Bank of Ranger, against the defendant W. H. Snell for the amount of the note sued on with interest and attorneys' fees, as provided for in the note, with a foreclosure of a mortgage lien on the property described in the petition and in the mortgage introduced in evidence. The jury further found a verdict in favor of W. H. Snell against Latham Company for the sum of $200, but found for the defendant L. P. Cox individually, and judgment was rendered in accordance with the verdict.

Latham Company has prosecuted an appeal as against defendant Snell alone, the record not showing any complaint by either Snell or Latham Company of the judgment in favor of the First National Bank of Ranger and of L. P. Cox.

[1] We think the assignments raising the objection that there was a misjoinder of parties and of causes of action must be overruled. It is to be remembered that the defendant specially pleaded that Latham Company and not the plaintiff, was the real owner of the note, presenting a good defense as against that company. In the interest of avoiding a multiplicity of suits, which is a favored doctrine in equity, we think it was entirely permissible for the defendant to make Latham Company a party as he did, with prayer in the alternative as made. See Love v. Keowne, 58 Tex. 199; Chevalier v. Rusk, Dallam, Dig. 613; Clegg v. Varnell, 18 Tex. 302.

[2] The fourth paragraph of the court's charge is as follows:

"Upon the issue above stated between W. H. Snell and L. P. Cox, individually, and the corporation of Latham Company, you are charged that should you find by a preponderance of the evidence that L. P. Cox, acting for the corporation of Latham Company, in the sale of the span of mules to W. H. Snell falsely represented to him, Snell, that the mules in controversy were ten years old, sound animals in body and health, and free from disease and suitable for general farm work, or if you find that said L. P. Cox, acting in the capacity as aforesaid guaranteed and warranted said animals to be sound in body and health and free from disease and suitable for general farm work, and you should further find that said mules were old, diseased, and worn out and not strong enough to do ordinary farm work, and you should further find that the said W. H. Snell, on ascertaining the real character and kind of animals bought, tendered and offered to return said animals to L. P. Cox, as general manager as aforesaid, and he, Snell, demanded the cancellation of the note executed for them, then and in that event, you will find for the defendant W. H. Snell, and against Latham Company in a sum equal to the difference between the contract price of the said animals and the real value of said animals."

Objection is made to the paragraph of the charge quoted, on the ground that there was neither pleading nor evidence authorizing the submission of the issue of fraud, the contention being that the case made was one of a breach of warranty only, but we think this contention must be overruled. As alleged, the representation and warranty constitute a continuing whole. They were not alleged to be in writing, nor was any specific warranty contained in the bill of sale or mortgage, which it is insisted constituted the contract. Either the fraud shown as alleged, or a breach of the warranty, if any, would as the court charged, authorize a recovery in Snell's behalf for the legal damages.

[3] The charge instructed the jury, in event of a finding in favor of W. H. Snell on the issues presented, that they should find against Latham Company in favor of Snell "in a sum equal to the difference between the contract price of the said animals and the real value of said animals." It is objected (and the question is also raised by assignments objecting to the refusal of special instructions giving the proper measure of damages) that there was neither pleading

nor evidence authorizing a submission of the measure of damages, and we find this objection to be well taken. Appellant so stated the fact, which is not denied in appellee's behalf, and which, therefore, under the rules would authorize us to accept the statement as true. Moreover, we have carefully examined the statement of facts, and while we find evidence that the mules were much older than it was alleged that they were represented to be, and that one or both were diseased and weak and not able to do as much work as was expected of them, we find no evidence establishing their market or intrinsic value, or that they were wholly worthless. Appellee, after testifying to the circumstances of his purchase, and that thereafter he hitched the mules to his loaded wagon and started home, further testified:

"When I got about 5 or 6 miles out of Eastland one of the mules seemed to give out and both dragged along very slow. They kept this up all the way to the farm, and we arrived at the farm late in the evening, having gone a distance of only about 12 miles. A week or so after this I went over to Gorman with the mules hitched to the wagon, and while there one of them took severely sick and I left the mules in the wagon yard there to be treated by a veterinary. * * * I tried to work the mules during that year in the crop, but they were weak, would not eat their feed, and got down real poor and I could not work them very much. I would say that the mules were not sound, but that they appeared to be all right at the time I looked at them. I relied on what Mr. Cox told me and on the looks of the mules at the time I purchased them. One of the mules was sick the biggest portion of the time. I left the farm some time in September, and left both of the mules there on the place when I left there; have never seen either of them since I left. I could have worked the mare mule more than I did if I had had another mule to work with her. But on account of the horse mule being sick and unable to work the mules all the time, I could not work the mare mule by herself. I had no other team there. My father-in-law had a team. We together had something like 80 or 90 acres in cultivation, and I cultivated about one-half of the place. * * * One of the mules I could not work at all, although both mules seemed to look all right and was in good flesh but would give out from weakness and could not pull a plow for even one-half day. At first and in less than three weeks I did not and could not use this mule at all. The other mule was not so bad, but I will say that through the crop season I did not work the best one more than one-third of the time. The mules were old, 19 or 20 years old."

Mr. Clem, the father-in-law, testified to the effect that the mules were weak, etc., stating that "the mules did not eat, sometimes they would leave their feed in the trough. The pasture was fairly good, but they got poor all the time, especially one of them. There was something like 90 acres that we cultivated in cotton and corn. Snell cultivated about 40 acres. Mr. Snell worked the mules during that year in his crop, but they did not do but about half as much work as they ought to have done."

There was other testimony but only of like effect. As will be seen from the evidence quoted, it does not appear that the mules were entirely without value and, as before stated, no witness attempted to testify in relation to the value of the mules at any time.

[4] Appellee's true measure of damage, if any, was the difference in the reasonable market value of the animals, if they had a market value, and if without market value their actual value in their condition at the time of delivery and the contract price.

[5] And the burden was not only upon appellee as against Latham Company to prove the facts necessary to constitute a liability on the part of Latham Company, and a right to recover damages, but also to show the amount of his damages, the amount of his recovery being one of the essential elements of his case. See T. & P. Ry. Co. v. Bigham, 30 S. W. 254; L. & G. N. Ry. Co. v. Simcock, 81 Tex. 503, 17 S. W. 47; Western Union Beef Co. v. Kirchevalle, 26 S. W. 148; Dickerson v. S. A., U. & G. Ry. Co., 170 S. W. 1045.

[6] The fourth paragraph of the court's charge is further objected to on the ground that it authorized a recovery in behalf of Snell upon a finding that L. P. Cox acted for the corporation of Latham Company in the sale of the span of mules, regardless of whether L. P. Cox was so authorized to act, and the charge seems subject to the criticism. Latham Company duly pleaded that the mules in question did not belong to the company; that the company knew nothing of them, and that L. P. Cox was not authorized in any manner to act for Latham Company, either in the sale of the mules or in the acceptance of the note payable to their order. L. P. Cox testified, in substance, that he and his brother, Boone Cox, were engaged in the mercantile business in Ranger under the firm name of Cox Bros.; that the two mules in question were purchased by Boone Cox in Hamilton county and brought to Ranger by him, but that the mules were later brought to Eastland, where he was acting as general manager for Latham Company, and placed in the Latham Company stock lots, but that the mules were not owned by the Latham Company and never were; that he never told the defendant Snell that Latham Company did own the mules. Cox further testified that the defendant Snell's note had been made upon one of the printed forms of Latham Company, and he had inadvertently failed to erase Latham Company as payee and insert Cox Bros., and that to remedy the oversight he had later indorsed the note in the name of Latham Company without recourse. T. W. Harrison for the Latham Company testified that he was the bookkeeper, secretary-treasurer of the corporation, Latham Company, at Eastland, owning stock in the corporation at the time, and that he remembered the two mules that Cox Bros., had in the Latham Company lot in the town of Eastland; that Cox Bros. carried an account with Latham Company, and that they

were charged regularly with the cost of the feed and care of the mules. He testified:

"The charge slip which I have here shows that 6 months Cox Bros. account was charged with feed and care of two mules for 60 days at the rate of 40 cents a day. These mules were never owned by Latham Company, they never had any interest in the mules, and L. P. Cox never had any authority to make any binding on Latham Company with reference to their sale or condition. The note sued on was never entered on the Latham Company's books, and never appeared as an asset of the Latham Company."

S. J. Day for the Latham Company testified that he attended to the mules together with the other stock at Eastland, fed them night and morning, and that after each feed he "would make a charge slip for the feed and take it in the office to Mr. Harrison to be entered as a charge against Cox Bros. for the care of these mules, and the charge slips which Mr. Harrison had are the original charge slips made at the time, and bear date covering a period of 60 days prior to the sale of the mules." Jim Hightower for the Latham Company testified:

"I know of the two Cox mules over which a controversy is raised in this case. I hauled cordwood with these mules for about 5 miles north of Eastland for a period of 30 or 40 days. All that I know about the mules is that they pulled over an uneven and hilly road a little over a cord of wood at a time. This is a good pull for a span of mules. They did not seem to be sick or weak, but what I regarded as good strong pullers. They eat hearty and were fat. L. P. Cox paid me for the work I did in hauling wood with these mules."

In view of the allegations and of the testimony just given, it was particularly important that the charge of the court should, among other things, distinctly impose the burden upon Snell of showing, by a preponderance of proof, that L. P. Cox, in the sale of the mules, was authorized by Latham Company to make the representations alleged.

[7] In view of another trial we wish also to briefly notice several objections to the testimony. On the trial the court permitted the witness W. H. Snell to testify, over the objection of Latham Company, that in a conversation over the phone at the time one of the mules was taken sick at Gorman, he told Mr. Cox of the condition of the mules and offered to return them. This testimony was objected to as irrelevant and immaterial and in the light of the issues made by the pleadings and the evidence it would seem to be so. It is not contended under the circumstances that Snell was entitled to a rescission of the contract, and the court submitted no such issue. The remedy sought and submitted was one for damages, and upon the issue of damage we fail to see the relevancy of the testimony relating to the offer to return.

[8] The witness Jim Hamilton was permitted to testify, over the objection of Latham Company, that some time after Snell had left the farm in September or October "I

was in the pasture one day and run across a dead carcass, which I supposed was that of one of the mules. I did not know what caused its death, if that was one of the mules, but they were very poor along the last of that fall." This testimony, of course, was offered as tending to prove the allegations that the mules were weak, diseased, etc., but we think to be admissible for this purpose it should have been shown with a little more clearness that the mule that the witness saw dead was one of 'the mules in question, and that the cause of its death should be pointed out in some such way as to afford a reasonable presumption that its death was attributable to the condition it was in when sold to Snell.

We conclude that for the errors indicated the judgment in favor of W. H. Snell against Latham Company must be reversed, and the cause, as between these parties, remanded for a new trial. As to the other parties, however, the judgment will be undisturbed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes